# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>~~THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",~~<br><br>~~Defendants.~~<br>BASHINVXIE,<br><br>Defendant. | Case No. 26-cv-00121<br><br>**Judge LaShonda A. Hunt**<br><br>**Magistrate Judge Keri L. Holleb Hotaling** |

**AMENDED COMPLAINT**

Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") hereby brings the present action against ~~the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants")~~bashinvxie and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over ~~Defendants~~Defendant since ~~each of the Defendants~~Defendant directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the

---

[1] ~~The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.~~

seller ~~aliases identified in Schedule A attached hereto~~alias bashinvxie (the "Seller ~~Aliases~~Alias"). Specifically, ~~Defendants have~~Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce ~~stores~~store that ~~target~~targets United States consumers using ~~one or more~~at least the Seller ~~Aliases, offer~~Alias, offers shipping to the United States, including Illinois, ~~accept~~accepts payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, ~~have~~has sold products featuring ~~Deckers'~~Deckers' patented design to residents of Illinois. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 1**. ~~Each of the Defendants~~Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Deckers substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Deckers to combat an e-commerce store ~~operators~~operator who ~~trade~~trades upon ~~Deckers'~~Deckers' reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use the same unauthorized and unlicensed product, namely the footwear shown in **Exhibit 1**, that infringes Deckers' patented design, U.S. Patent No. D927,161 (the "Infringing Product"). ~~Defendants create~~Defendant creates e-commerce stores operating under ~~one or more~~at least the Seller ~~Aliases~~Alias that are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products to unknowing consumers. ~~Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.~~ ~~Defendants attempt~~Defendant attempts to avoid and mitigate liability by operating under ~~one or more~~at least the Seller ~~Aliases~~Alias to conceal both ~~their identities~~its identity and the full scope and interworking of ~~their~~its operation.

2

Deckers has filed this action to combat ~~Defendants'~~ Defendant's infringement of its patented design, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Deckers has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design as a result of ~~Defendants'~~ Defendant's actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff Deckers Outdoor Corporation**

4. Plaintiff Deckers Outdoor Corporation is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of business located in Goleta, California. Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975. Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®.

5. Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG brand of premium comfort-leisure footwear (the "UGG Products"). UGG Products are distributed and sold to consumers through retailers throughout the United States, including over 100 an authorized ~~retailers~~retailer in Illinois, the ugg.com website and UGG Concept Stores.

6. UGG Products have become enormously popular and even iconic, driven by ~~Deckers'~~Deckers' arduous quality standards and innovative design. Among the purchasing public, genuine UGG Products are instantly recognizable as such. In the United States and around the world, the UGG brand has come to symbolize high quality, and UGG Products are among the most recognizable premium footwear products in the world.

3

7. UGG Products are known for their distinctive patented designs. These designs are broadly recognized by consumers. Footwear fashioned after these designs are associated with the quality and innovation that the public has come to expect from UGG Products. Deckers uses these designs in connection with its UGG Products, including, but not limited to, the following patented design, herein referred to as the "UGG Design." UGG Products, including those which embody the UGG Design, are marked in compliance with 35 U.S.C § 287(a).

| Patent Number | Claim | Issue Date |
|---|---|---|
| D927,161 | *[drawings of boot design]* | August 10, 2021 |



8. Deckers is the lawful assignee of all right, title, and interest in and to the UGG Design. The patent for the UGG Design was lawfully issued on August 10, 2021, with named inventor Helene Anne Frain Terras. Attached hereto as **Exhibit 2** is a true and correct copy of the United States Patent for the UGG Design.

**The ~~Defendants~~Defendant**

9. ~~Defendants are individuals~~Defendant is an individual and/or business ~~entities~~entity of unknown makeup who ~~own~~owns and/or ~~operate one or more of~~operates at least the e-commerce ~~stores~~store under ~~at least~~ the Seller ~~Aliases identified on Schedule A~~Alias and/or other seller aliases not yet known to Deckers. On information and belief, ~~Defendants reside~~Defendant resides and/or ~~operate~~operates in the ~~People's~~People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems, or ~~redistribute~~redistributes products from the same or similar sources in those locations. ~~Defendants have~~Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

5

10. On information and belief, ~~Defendants~~Defendant either individually or jointly, ~~operate one or more~~ operates the e-commerce ~~stores~~store under the Seller ~~Aliases listed in Schedule A attached hereto.~~Alias. Tactics used by ~~Defendants~~Defendant to conceal ~~their identities~~its identity and the full scope of ~~their~~its operation make it virtually impossible for Deckers to learn ~~Defendants'~~Defendant's true ~~identities~~identity and the exact interworking of their network. If ~~Defendants provide~~Defendant provides additional credible information regarding ~~their identities~~its identity, Deckers will take appropriate steps to amend the Amended Complaint.

### IV. ~~DEFENDANTS'~~DEFENDANT'S UNLAWFUL CONDUCT

11. In recent years, Deckers has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Infringing Products on online marketplace platforms such as PayPal, ~~Amazon, Walmart, and~~ Temu, including the e-commerce ~~stores~~store operating under the Seller ~~Aliases~~Alias. The Seller ~~Aliases target~~Alias targets consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

12. Third party service providers like those used by ~~Defendants~~Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[3] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

commerce platforms."[4] Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[7]

13. ~~Defendants have~~Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce ~~stores~~store that ~~target~~targets United States consumers using ~~one or more~~at least the Seller ~~Aliases, offer~~Alias, offers shipping to the United States, including Illinois, ~~accept~~accepts payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, ~~have~~has sold Infringing Products to residents of Illinois.

14. ~~Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate~~Defendant facilitates sales by designing e-commerce ~~stores~~store operating under the Seller ~~Aliases~~Alias so that ~~they appear~~it appears to unknowing consumers to be an authorized online ~~retailers~~retailer, outlet ~~stores~~store, or ~~wholesalers.~~ wholesaler. The E-commerce ~~stores~~store operating under the Seller ~~Aliases appear~~Alias appears sophisticated and ~~accept~~accepts payment in U.S. dollars and/or funds from

---

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at 22.
[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. The E-commerce ~~stores~~store operating under the Seller ~~Aliases~~Alias often ~~include~~includes content and images that make it very difficult for consumers to distinguish ~~such stores~~it from an authorized retailer. Deckers has not licensed or authorized ~~Defendants~~Defendant to use the UGG Design, and ~~none of the Defendants are~~Defendant is not an authorized ~~retailers~~retailer of genuine UGG Products.

15. E-commerce store operators like ~~Defendants~~Defendant commonly engage in fraudulent conduct when registering ~~the Seller Aliases~~seller aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true ~~identities~~identity and the scope of their e-commerce operation.

16. E-commerce store operators like ~~Defendants~~Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like ~~Defendants~~Defendant to conceal their identities and the full scope and interworking of ~~their~~its operation, and to avoid being shut down.

~~17. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.~~

~~18.~~17. E-commerce store operators like ~~Defendants~~Defendant are in constant communication with each other and regularly participate in QQ.com chat rooms and through

8

websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

19.18. Infringers such as ~~Defendants~~Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of ~~Deckers'~~Deckers' enforcement. E-commerce store operators like ~~Defendants~~Defendant maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Deckers. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

20.19. ~~Defendants are~~Defendant is working to knowingly and willfully import, distribute, offer for sale, and sell Infringing Products ~~in the same transaction, occurrence, or series of transactions or occurrences. Defendants~~. Defendant, without any authorization or license from Deckers, ~~have~~has knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the UGG Design. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, ~~each~~the Defendant has sold Infringing Products into the United States and Illinois over the Internet.

21.20. ~~Defendants'~~Defendant's infringement of the UGG Design in the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

22.21. ~~Defendants'~~Defendant's infringement of the UGG Design in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent

sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, is irreparably harming Deckers.

## COUNT I
## INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D927,161
**(35 U.S.C. § 271)**

~~23.~~22.  Deckers hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

~~24.~~23.  ~~Defendants are~~Defendant is making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the ornamental design claimed in the UGG Design.

~~25.~~24.  ~~Defendants have~~Defendant has infringed the UGG Design through the aforesaid acts and will continue to do so unless enjoined by this Court.  ~~Defendants'~~Defendant's wrongful conduct has caused Deckers to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.  Deckers is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

~~26.~~25.  Deckers is entitled to recover damages adequate to compensate for the infringement, including ~~Defendants'~~Defendant's profits pursuant to 35 U.S.C. § 289.  Deckers is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

## PRAYER FOR RELIEF

WHEREFORE, Deckers prays for judgment against ~~Defendants~~Defendant as follows:

1) That ~~Defendants, their~~Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with ~~them~~it be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Product;

   b. aiding, abetting, contributing to, or otherwise assisting anyone in making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Product; and

   c. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

2) Entry of an Order that, upon ~~Deckers'~~Deckers' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, ~~Amazon, Walmart, and~~ Temu, (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with ~~Defendants~~Defendant in connection with the sale of the Infringing Product;

3) That Deckers be awarded such damages as it shall prove at trial against ~~Defendants~~Defendant that are adequate to compensate Deckers for ~~Defendants'~~Defendant's infringement of the UGG Design, but in no event less than a reasonable royalty for the use made of the invention by the ~~Defendants~~Defendant, together with interest and costs, pursuant to 35 U.S.C. § 284;

4) That the amount of damages awarded to Deckers to compensate Deckers for infringement of the UGG Design be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

5) In the alternative, that Deckers be awarded all profits realized by ~~Defendants~~Defendant from ~~Defendants'~~Defendant's infringement of the UGG Design, pursuant to 35 U.S.C. § 289;

6) That Deckers be awarded its reasonable ~~attorneys'~~attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this ~~6th~~7th day of January 2026.    Respectfully submitted,

                  /s/ Justin R. Gaudio
                  Amy C. Ziegler
                  Justin R. Gaudio
                  Justin T. Joseph
                  Thomas J. Juettner
                  Greer, Burns & Crain, Ltd.
                  200 West Madison Street, Suite 2100
                  Chicago, Illinois 60606
                  312.360.0080 / 312.360.9315 (facsimile)
                  aziegler@gbc.law
                  jgaudio@gbc.law
                  jjoseph@gbc.law
                  tjjuettner@gbc.law

                  *Counsel for Plaintiff Deckers Outdoor Corporation*